UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARSHALL BROWN : | PRISONER CASE NO: |
| : | 3:09-cv-2117 (JCH) |
| v. : | |
| : | DECEMBER 27, 2012 |
| WARDEN MURPHY : | |

**RULING RE: AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 27)**

Petitioner Marshall Brown, an inmate confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, brings this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2000). He challenges his conviction for attempted murder, kidnapping in the first degree and carrying a pistol without a permit. In May 2012, the court granted the respondent's Motion to Dismiss, on the ground that the petitioner had not exhausted his state court remedies with regard to all grounds for relief, and then closed the case.

The petitioner has moved to reopen the case and has filed an Amended Petition. The Motion to Reopen is granted. In his Amended Petition, Brown asserts one ground for relief, that the information was duplicitous, thereby depriving him of his constitutional right to fair notice of the crimes charges. For the reasons that follow, the Amended Petition is denied.

I.    STANDARD OF REVIEW

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a). The federal court cannot grant a

petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002), cert. denied, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. Carey v. Musladin, 549 U.S. 70, 74 (2006). Second Circuit law, which does not have a counterpart in Supreme Court jurisprudence, cannot provide a basis for federal habeas relief. See Del Valle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

    A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. Bell v. Cone, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." Schriro v. Landrigan, 550 U.S.465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). The presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them" will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. Smith v. Mann, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Pinholster, 131 S.Ct. at 1398-99. Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

## II.   PROCEDURAL BACKGROUND

The petitioner was convicted, after a jury trial, of two counts of murder, two counts of kidnapping and one count of carrying a pistol without a permit. He was sentenced to a total effective term of imprisonment of thirty-six years. On direct appeal, the petitioner argued that the information was duplicitous and that the trial court improperly instructed the jury on the element of intent. The Connecticut Appellate

Court affirmed the conviction, and the Connecticut Supreme Court denied certification to appeal.  See State v. Brown, 97 Conn. App. 837, 838 (2006), cert. denied, 280 Conn. 944 (2007).  Subsequently, the state court vacated the convictions for kidnapping, and the state decided not to retry the petitioner on those charges.  The petitioner was re-sentenced to a total effective sentence of thirty-six years.  The petitioner also filed two state habeas actions raising issues that are not relevant to the claim in the Amended Petition before this court.

### III.    FACTUAL BACKGROUND

The Connecticut Appellate Court determined that the jury reasonably could have found the following facts.

The petitioner had a romantic relationship with Pauline Lindo spanning several years.  In May 2001, Lindo ended the relationship and told the petitioner that she was seeing someone else.  The petitioner did not want the relationship to end.  He continued calling Lindo at home and began stopping at her house to wait for her to arrive home from work.  Id. at 839.

On June 4, 2001, the petitioner was reprimanded by his employer and quit his job.  Upon leaving his workplace, he withdrew $800 from the bank and purchased a semiautomatic handgun.  The seller loaded the gun with six rounds of ammunition and showed the petitioner how to use it.  Id.

In the late morning, the petitioner went to the health care center where Lindo worked as a certified nurse's assistant.  Lindo told him that he would have to wait until her shift ended to speak to her.  When a supervisor asked Lindo to transport a patient to the hospital, the petitioner pulled a gun and put it to Lindo's head.  He grabbed her

and pulled the trigger, but the gun did not fire.  Unknown to the petitioner, the gun had a faulty firing pin.  The petitioner pulled the trigger several more times, but the gun did not fire.  Lindo pleaded with the petitioner to leave the facility dining room and stop pulling the trigger on the gun.  The petitioner dragged Lindo to a nearby nurses' station where he continued to pull the trigger and struggle with Lindo.  Id. at 839-40.

Several of Lindo's coworkers and a maintenance worker tried to come to her aid.  When the petitioner pointed the gun at them, they left and called the police.  One nurse entered the nurses' station and pulled the petitioner off Lindo.  The petitioner grabbed the nurse, put the gun to her head and pulled the trigger twice.  Again, the gun did not fire.  The nurse managed to free herself and ran away to call the police.  Id. at 840-41.

After the nurse escaped, Lindo managed to twist the petitioner's arm, causing him to drop the gun.  Lindo kicked the gun to the nurse, who had returned to try to help Lindo.  When the petitioner tried to chase the nurse to retrieve the gun, Lindo pushed him to the floor.  The petitioner got up and ran out the back door of the facility.  As he drove toward the exit of the parking lot, he was apprehended by the police.  Id. at 841.

**IV.   DISCUSSION**

The petitioner asserts one ground for relief in his Amended Petition, that the information charging him with murder was duplicitous, thereby depriving him of his Sixth Amendment right to fair notice of the charges against him.  The respondent argues that the Amended Petition must be denied because there is no clearly established federal law setting a standard for duplicitous claims in these circumstances.  As explained above, the federal court cannot grant a petition for writ of habeas corpus unless the petitioner can demonstrate that the state court adjudication of his claim was contrary to,

or involved an unreasonable application of, clearly established Supreme Court law.

Federal courts consider indictments duplicitous if they join two or more distinct claims in a single count.  See United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992).  This is not the claim asserted by the petitioner.  The petitioner conceded the novelty of his claim on direct appeal.  See Am. Pet. at 61 (petitioner's brief on direct appeal).  The petitioner argues that the information charging him with murder was duplicitous because, although it charges only one crime in each count, it did not specify the names of the victims.  The petitioner argued that the policy considerations underlying the traditional duplicity doctrine were implicated in his case because he was charged with two counts of attempted murder and the testimony of six different witnesses show that each could have been an intended victim.  He contends that there was no way to ensure that the jury agreed as to the identity of the intended victims. Brown, 97 Conn. App. at 843.

The Supreme Court has not held that the duplicity doctrine applies in this circumstance.  The petitioner cites only cases from various courts of appeal, and such cases do no constitute clearly established federal law to warrant federal habeas corpus relief.  Thus, the holding of the Connecticut Appellate Court cannot be contrary to, or an unreasonable application of, clearly established Supreme Court law.

In addition, the petitioner received fair notice of the charges against him.  An indictment must meet two constitutional requirements.  First, it must contain the elements of the crime charged and fairly inform the criminal defendant of the charge against which he must defend.  Second, the indictment must enable the criminal defendant to plead that an acquittal or conviction bars any future prosecution for the

same offense.  See United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007) (citations omitted).

The Connecticut Appellate Court noted that the petitioner conceded that each count of the information identified a single crime and included the statutory provisions, the date and location where the crime occurred.  The petitioner also acknowledged that he was aware that the state was prosecuting him for attempted murder of Lindo and the nurse.  In addition, the Connecticut Appellate Court noted that the petitioner's defense was that he did not intend to murder anyone and that Lindo instigated everything.  In addition, the evidence at trial showed that the petitioner only put the gun to the heads of Lindo and the nurse, and he repeatedly pulled the trigger.  The state consistently referred to Lindo and the nurse as the victims during closing argument.  Thus, the Connecticut Appellate Court concluded that the absence of names from the information did not prejudice the defense and would not have confused the jury.  See Brown, 97 Conn. App. at 844-45.  This analysis is similar to the analysis of the Supreme Court in Resendiz-Ponce, where the Court held that the failure of the indictment to specify which of several possible overt acts supported the charge of attempted reentry into the United States did not render the indictment insufficient.  549 U.S. at 108.

The petitioner argues that the appellate court's analysis was contrary to the holding in Blockburger v. United States, 284 U.S. 299, 304 (1932), where the Supreme Court held that two offenses would be considered the same for double jeopardy purposes unless one offense required proof of a fact not required to establish the other offense.  Contrary to the petitioner's interpretation, Blockburger does not hold that a criminal defendant cannot be charged with more than one count of an offense.

7

Although inclusion of the victims' names would have been preferable, the state court found that the petitioner was aware that he was being charged with attempted murder of Lindo and the nurse and evidence was presented to support each charge.

The court concludes that the petitioner's convictions for attempted murder of Lindo and attempted murder of the nurse based on an information that included two counts of attempted murder but did not include the victims' names did not deprive him of his right to fair notice of the charges against him. The Amended Petition for Writ of Habeas Corpus is denied on this ground.

## V.  CONCLUSION

The Amended Petition for Writ of Habeas Corpus [**Doc. No. 27**] is **DENIED**. Because the petitioner has not show that he was denied a constitutional right, a certificate of appealability will not issue. The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 27th day of December, 2012.

　　　　　　　　　　　　　　　　　　　　　　 /s/ Janet C. Hall
　　　　　　　　　　　　　　　　　　　　　　Janet C. Hall
　　　　　　　　　　　　　　　　　　　　　　United States District Judge